FILED

MAY 0 5 2010

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NOLA JANE WHOSENDORFE,

           Plaintiff,

    v.

MICHAEL J. ASTRUE, Commissioner of Social
Security,

                Defendant.

CV-09-6003-PK

FINDINGS AND
RECOMMENDATION

PAPAK, Magistrate Judge:

    Plaintiff Nola Whosendorfe appeals the Commissioner's decision denying her application
for supplemental security income payments under Title XVI of the Social Security Act. The court
has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The Commissioner's decision should be
affirmed.

    Whosendorfe alleges she became disabled April 23, 2004, due to type 2 diabetes mellitus and
mental impairments. Admin. R. 159, 176. The administrative law judge ("ALJ") applied the
sequential disability determination process described in 20 C.F.R. § 416.920. *See Bowen v. Yuckert*,

1 - FINDINGS AND RECOMMENDATION

482 U.S. 137, 140 (1987). The ALJ found Whosendorfe's ability to work impaired by diabetes mellitus, attention deficit hyperactivity disorder ("ADHD"), borderline intellectual functioning, dysthymia, and depression. Admin. R. 93. She found that, despite the limitations these conditions imposed, Whosendorfe retained the residual functional capacity ("RFC") to perform work at the medium level of exertion, involving routine tasks with limited variation in job duties, limited interaction with coworkers and the general public, but excluding work involving complex or detailed instructions. *Id.* at 94. The ALJ found Whosendorfe's RFC did not preclude the activities required to perform work she had done in the past as a park maintenance worker. *Id.* at 97. Alternatively, the ALJ relied on testimony from a vocational expert ("VE") to conclude that Whosendorfe's RFC did not leave her unable to perform other work in the national economy. *Id.* at 97-98. Accordingly, the ALJ found Whosendorfe not disabled within the meaning of the Social Security Act.

The court reviews that decision to ensure that it was based on correct legal standards and that the findings of fact are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004). Whosendorfe challenges the ALJ's evaluation of her subjective statements, the evidence provided by two psychiatrists involved in her treatment, and the report of an examining psychologist. Whosendorfe also challenges the Appeals Council's consideration of a second report of the examining psychologist submitted after the ALJ issued her decision.

## I.     Credibility Determination

Whosendorfe alleged disability beginning in April 2004 due to limitations stemming from mental health issues and diabetes. Admin. R. 176. In written statements, Whosendorfe indicated

she typically had difficulty getting motivated and focusing for any amount of time. *Id.* at 172. She thought she could pay attention for about 5 to 10 minutes at a time. *Id.* at 210. She indicated she had trouble dealing with stress or changes in routine. *Id.* at 211.

Whosendorfe indicated she typically spent the day lying on the couch and staring out the window with no desire to do anything. She performed household chores including laundry, cooking, yard work, grocery shopping once or twice a month, cleaning house, taking her mother to and from medical appointments, taking her daughter to and from school, and caring for pets. She managed her own finances and did not receive help with any activities of daily living. She had no problems with personal care or driving. *Id.* at 163-65, 205-07. Whosendorfe initially indicated she got along poorly with family members but satisfactorily with neighbors. *Id.* at 164-65. Later, she reported she sat with others and talked on a daily basis and attended church once a week. *Id.* at 209. Whosendorfe said she got along with authority figures. *Id.* at 211.

At the hearing in September 2006, Whosendorfe testified that she obtained her GED in June 2005, after taking classes for that purpose at Linn Benton Community College. *Id* at 105. She asserted she is unable to work because of mood swings and because she does not like to be in unfamiliar places. She testified that she stays home all the time because she is afraid of the outside world. *Id.* at 107-08. She testified that she typically spends the day with her dog and cat, doing household chores and listening to music. She makes quilts and cooks for herself and her boyfriend but does not have the patience to sit and read. *Id.* at 109-11. She worked in the past as a flagger, park maintenance worker, and medical transport driver for several elderly patients. *Id.* at 117, 120.

The ALJ accepted that Whosendorfe had mental impairments that restricted her to work involving routine tasks with limited variation in job duties, limited interaction with coworkers and

the general public, and no complex or detailed instructions. The ALJ did not accept that Whosendorfe's symptoms were so intense, persistent and limiting as to preclude all competitive work. *Id.* at 93-94. In other words, the ALJ found medical evidence of underlying impairments that could reasonably be expected to produce some degree of the symptoms Whosendorfe alleged, but found her allegations as to the intensity, persistence, and limiting effects of her symptoms not entirely credible. *Id.* at 94. In effect, the ALJ rejected the suggestion in Whosendorfe's statements that she could not pay attention, focus, deal with stress and variation, or engage the world outside her home adequately to maintain employment within the limitations of her RFC assessment.

Where the claimant has produced objective medical evidence establishing that she suffers from an impairment that could reasonably produce the symptoms of which she complains, an adverse credibility finding must be based on clear and convincing reasons. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008). The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that she did not arbitrarily discredit the claimant's testimony. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). The ALJ should consider objective medical evidence, the claimant's treatment history, daily activities, and work record, and the observations of treating sources and third parties with personal knowledge of the claimant's functional limitations. 20 C.F.R. § 416.929(c); *Tommasetti*, 533 F.3d at 1039; *Smolen v. Chater*, 80 F.3d 1373,1284 (9th Cir. 1996); SSR 96-7p, 1996 WL 374186.

The ALJ's decision reflects that the ALJ considered the evidence available relating to these factors. The ALJ noted that clinical observations of Whosendorfe's treating sources were generally benign, except for indications of moderate disability. She also noted Whosendorfe's treatment

history showed she did not consistently comply with treatment, but that her symptoms improved significantly when she maintained her medication regimen. For example, Whosendorfe reported her ADHD symptoms were improved with Adderall without any side effects. She was able to focus, read, and follow through on tasks without being distracted. Admin R. 297, 378. Her reports of severe depression symptoms corresponded to periods when she failed to start her Zoloft prescription. *Id.* at 357.

The ALJ also found Whosendorfe's reported activities were inconsistent with the severity of the limitations she claimed. *Id.* at 94. For example, although Whosendorfe said she was fearful of the unfamiliar and the world outside her home, she was able to travel and live temporarily in Montana, complete her GED, and attend community college classes. She told treating sources she could perform household chores, shop, and use public transportation. *Id.* at 295. These activities reasonably support the ALJ's conclusion that she is able to cope with unfamiliar settings, interact with others, pay attention, and concentrate to a greater extent than suggested in her subjective statements. The ALJ's RFC assessment reasonably accommodates Whosendorfe's limitations in these functional areas.

The ALJ also relied on comments from one interviewer indicating Whosendorfe was very focused on medications, particularly Adderall, an amphetamine medication used to treat ADHD. Admin. R. 94, 302. In the same interview, Whosendorfe reportedly admitted abusing prescription drugs in the past. *Id.* at 300. The ALJ properly took these comments into consideration, but the court concludes they are isolated and do not support a pervasive pattern of misrepresentation or manipulation of mental health care providers to obtain drugs. Accordingly, this portion of the ALJ's explanation does not meet the clear and convincing standard.

Nonetheless, the ALJ's other reasoning is sufficient to show that the ALJ did not arbitrarily disregard Whosendorfe's subjective statements. She considered all the available evidence relating to the proper factors for assessing credibility. Taken as a whole, the ALJ's explanation is clear and convincing and her factual findings are supported by substantial evidence. Accordingly, the ALJ's credibility determination should not be disturbed.

## II.    <u>Medical Source Statements</u>

Whosendorfe contends the ALJ improperly rejected the opinions of Evelyn Driscoll, M.D., H. F. Shellman, Ph.D., and Gale Smolen, M.D. An ALJ has a duty to explain with clear and convincing reasons why she has chosen to reject a treating or examining physician's opinion that is not contradicted by another physician. *Thomas*, 278 F.3d at 956-57; *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If the opinion is contradicted by other physicians, the ALJ must explain with specific, legitimate reasons. *Thomas*, 278 F.3d at 957. The reports of Drs. Driscoll, Smolen, and Shellman differ in the diagnoses reached and the resulting functional limitations predicted. Accordingly, the ALJ was required to provide an explanation with specific, legitimate reasons for discounting their opinions.

### A.    *Dr. Driscoll*

On July 23, 2004, Whosendorfe first met Dr. Driscoll, a psychiatrist in Helena, Montana. Whosendorfe sought to continue treatment of depression and ADHD, which she had started with mental health care providers in Oregon, but had discontinued. Whosendorfe stated she had a history of depression beginning when she was a teenager and ADHD diagnosed during her middle school years. She reported a history of special education and dropping out of school in the ninth grade. Dr. Driscoll made generally benign clinical observations during her mental status examination, noting

only that Whosendorfe was restless and fidgety, had some speech latency, and seemed moderately depressed. Admin. R. at 298-99.

Dr. Driscoll diagnosed major depression of moderate severity, ADHD, and a possible learning disorder based on Whosendorfe's history of academic difficulty. She assigned a global assessment of functioning score of 50, indicating serious symptoms or serious impairment in social, occupational, or school functioning. *Id.* at 299. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) ("DSM-IV") 30-32. Dr. Driscoll restarted Whosendorfe on medications her previous physician had prescribed, Adderall for ADHD and Zoloft for depression. Admin. R. 299.

Dr. Driscoll saw Whosendorfe on only one other occasion, on August 20, 2004. Whosendorfe reported her ADHD symptoms were improved with Adderall without any side effects. She was able to focus, read, and follow through on tasks without being distracted. Whosendorfe said her depression remained about the same, but Dr. Driscoll observed that Whosendorfe appeared healthier and her depression appeared to be mild. *Id.* at 297.

On October 28, 2004, without having seen Whosendorfe again, Dr. Driscoll responded to a request for a mental status report from a Montana state disability determination agency. *Id.* at 293. Dr. Driscoll indicated Whosendorfe had symptoms of restlessness, inability to sit still and concentrate, difficulty focusing, depressed mood, and poor memory for recent events. *Id.* at 294. Dr. Driscoll noted Whosendorfe had improved slightly in her only follow-up visit. She indicated Whosendorfe was independent in activities of daily living, except that she might need help accessing services and managing finances. Dr. Driscoll found no impairment of social functioning. She opined Whosendorfe was not able to focus and complete tasks on time. Dr. Driscoll indicated

Whosendorfe had potential for fair to good improvement with adequate psychiatric treatment and social support. *Id.* at 294-96.

The ALJ gave little weight to Dr. Driscoll's mental status report from October 2004. *Id.* at 95. The ALJ pointed out that Dr. Driscoll's conclusions in that report were not consistent with her own progress notes in which she indicated Whosendorfe's ability to sit still, concentrate, and complete tasks without being distracted were intact when she complied with her Adderall prescription. Impairments that are effectively controlled by medication are not disabling. *Warre v. Comm'r of Soc. Sec. Admin.,* 439 F.3d 1001, 1006 (9th Cir. 2006). Contrary to the October report, Dr. Driscoll's progress notes indicate Whosendorfe's depression was mild. An ALJ may reject a physician's opinion regarding a patient's limitations when the limitations are not supported by the physician's own clinical findings and observations. *Tommasetti*, 533 F.3d at 1044. An ALJ need not accept a physician's opinion when the physician fails to adequately explain and support the opinion with clinical findings. *Thomas*, 278 F.3d at 957; *Tonapetyan v. Halter,* 242 F.3d 1144, 1149 (9th Cir. 2001).

The ALJ also indicated that Dr. Driscoll's brief treatment relationship with Whosendorfe was inadequate to support an accurate impression of Whosendorfe's functional capacity on a longitudinal basis. Admin. R. 95. Dr. Driscoll only saw Whosendorfe twice within a 30-day period. Whosendorfe was untreated at the beginning of that period and showed significant improvement by the end of the period, even though she was only at the initial stage of treatment. Under these circumstances, the ALJ's determination that Dr. Driscoll's opinion should carry little weight as an indication of Whosendorfe's ongoing functional capacity while complying with treatment was

reasonable. This is further supported by Dr. Driscoll's optimistic prognosis for improvement if Whosendorfe continued to comply with treatment.

The ALJ's explanation for discounting the weight she gave Dr. Driscoll's report is based on specific, legitimate reasons supported by substantial evidence. *Thomas*, 278 F.3d at 956-57.

B.      *Dr. Shellman*

In November 2004, Dr. Shellman performed a comprehensive psychological evaluation, including a clinical interview and formal testing. Admin. R. 309. Whosendorfe said she was capable of managing funds and handling her own finances and independent in her activities of daily living. She stated she experienced monthly bouts of depression, each lasting up to six days, during which she did not get out of bed, dress, eat, or interact with anyone other than her family. Admin. R. 310. Dr. Shellman observed that Whosendorfe was visibly depressed and her affect was appropriate to her depressed mood. He also indicated Whosendorfe's judgment and insight were impaired to some extent. In all other respects, Dr. Shellman's mental status examination findings were benign. *Id.* at 311.

On formal testing, Whosendorfe scored in the low average range of intellectual function. Raw scores measuring executive function indicated mild to moderate impairment. Tests for basic attention and concentration indicated moderate to severe impairment. Measures of recent memory and new learning showed mild impairment. Whosendorfe's speech and language functioning were within normal limits. Validity measures suggested Whosendorfe tended to portray herself in a positive light, potentially under-representing the extent of her impairments. *Id.* at 311-12.

Unlike any other medical source, Dr. Shellman diagnosed bipolar disorder and borderline personality disorder. He opined that Whosendorfe had marked problems with attention and

concentration stemming from a bipolar disorder. He found marked impairment of social functioning based on Whosendorfe's subjective statements describing interactions with family members and avoidance of non-family members. He found moderate impairment of activities of daily living based on Whosendorfe's subjective assertion of five to six day bouts of depression leaving her confined to her bed. These same assertions formed the basis of his conclusion that Whosendorfe experienced four or more episodes of decompensation during the preceding 12 months. Dr. Shellman assigned a GAF score of 50, which clinicians use to indicate serious symptoms or serious impairment of social, occupational, or school functioning. *Id.* at 308-09. DSM-IV at 30-32.

The ALJ did not give Dr. Shellman's report substantial weight in her decision. Admin. R. 95. The ALJ found Dr. Shellman's diagnosis differed radically from the diagnoses reached by all other medical sources, particularly Whosendorfe's treating sources. In addition, the ALJ found Dr. Shellman relied extensively on Whosendorfe's subjective claim that she was essentially bedridden for up to six days each month. The ALJ reasonably found this claim unreliable because it was not corroborated by reports to Whosendorfe's treating sources. Nor did Whosendorfe mention this extreme limitation in her testimony or written statements. Admin. R. 95. It is reasonable for an ALJ to expect the claimant to report and seek treatment for such a debilitating condition. It is proper for an ALJ to reject a physician's disability opinion that is premised on the claimant's subjective complaints which the ALJ finds unreliable; the physician's opinion is no more credible than the statements upon which it is based. *Tonapetyan*, 242 F.3d at 1149; *Bray v. Comm'r of Soc. Sec.*, 554 F.3d 1219, 1228 n.8 (9th Cir. 2009).

The ALJ believed Whosendorfe's digit span test scores and ability to sit through the two-day testing session without requiring excessive breaks were indicative that she retained adequate ability

to persist and attend to simple, routine work-related activities. The ALJ's interpretation of the digit span test scores is not persuasive because she has no expertise in formal psychological testing and her function is not to make independent medical judgments. However, Whosendorfe's demonstrated ability to persist and attend to testing over an extended period reasonably undermines her testimony that her ability to pay attention is limited to no more than five to ten minutes at a time. *Id.* at 210. This further diminishes the reliability of the subjective statements upon which Dr. Shellman based his opinion.

Similarly, the ALJ rejected Dr. Shellman's opinion that Whosendorfe had experienced four or five episodes of decompensation of extended duration in the preceding 12 months because there is no evidence of such episodes anywhere in the record. This opinion was premised on Whosendorfe's subjective assertions in the interview portion of his evaluation, and the ALJ properly found them unreliable. Even if those assertions were true, however, the bouts of depression she described did not persist for two weeks as contemplated in the regulatory description of episodes of decompensation. 20 C.F.R. Pt. 404, Subpt. P, App. 1.

The ALJ's explanation for discounting the weight she gave Dr. Shellman's report is based on specific, legitimate reasons supported by substantial evidence and it should not be disturbed. *Thomas*, 278 F.3d at 956-57.

In March 2007, two months after the ALJ's decision, Dr. Shellman performed a second psychological evaluation. This included a second interview of Whosendorfe and additional testing. Whosendorfe indicated she continued to experience depression and apprehension around strangers. She did not mention monthly bouts during which she remained confined to her bedroom for days, as she reported during the earlier evaluation. She stated she had completed her GED. Dr. Shellman

observed that Whosendorfe seemed to lose focus but could be redirected. She exhibited and complained of multiple symptoms of depression. Admin. R. 63-65.

On formal testing, Whosendorfe's scores were consistent with the earlier testing administered by Dr. Shellman in 2004. Her scores fell in the average range on verbal intelligence and low average on nonverbal intelligence, for a composite score in the low average range. Her scores for executive function again showed mild to moderate impairment and on basic attention and concentration measures Whosendorfe again scored in the severely impaired range with particular weakness in auditory comprehension. *Id.* at 65-66.

Despite the similarities in test results and clinical observations in the two evaluations, Dr. Shellman changed his diagnostic impression. He ruled out his earlier diagnosis of bipolar disorder in light of the absence of manic episodes. Instead, he diagnosed major depression, consistent with the conclusion of Drs. Driscoll and Smolen. Dr. Shellman found the ADHD diagnosis reached by Drs. Driscoll and Smolen unsupported, however. He believed Whosendorfe's symptoms were better accounted for by a diagnosis of borderline personality disorder. *Id.* at 62-63. Dr. Shellman did not update his ratings of the severity of Whosendorfe's limitations in activities of daily living, social functioning, concentration and attention, or episodes of decompensation.

Dr. Shellman's second report was not before the ALJ, because Whosendorfe did not obtain the follow-up evaluation until after her claim was denied. Whosendorfe offers no reason for this delay. The Commissioner contends the court should not consider Dr. Shellman's second report because Whosendorfe failed to show good cause for its untimely submission. In this circuit, the good cause requirement has been applied primarily, if not exclusively, when new, material evidence is presented in support of a request for remand under sentence six of 42 U.S.C. § 405(g). Under

sentence six, the district court may remand without a substantive ruling on the correctness of the Commissioner's decision, for agency consideration of new, material evidence that was for good cause not presented during the decision-making process before the agency. For example, in the case relied on by the Commissioner, *Mayes v. Massanari*, 276 F.3d 453 (9th Cir. 2001), the court upheld the district court's refusal to remand pursuant to sentence six because the claimant had not shown good cause for having failed to produce the new evidence earlier.

The present case differs because Whosendorfe offers the new evidence in support of her substantive challenge to the ALJ's decision under sentence four of section 405(g). This circuit has not recognized a good cause requirement applicable in these circumstances. Instead, this circuit has held that the court properly may consider new materials that the Appeals Council addressed in the context of denying the claimant's request for review. *Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000); *Ramirez v. Shalala*, 8 F.3d 1449, 1451-52 (9th Cir. 1993). Under these cases, where the claimant is seeking review based on evidence not presented to the ALJ, the Appeals Council must provide such review only when the submitted evidence is new, material, and relates to the period on or before the date of the ALJ's decision. *Ramirez*, 8 F.3d at 1452 (relying on 20 C.F.R. § 404.970(b)).

Here, the Appeals Council concluded the new report from Dr. Shellman was not material, stating that the report provided no basis for changing the ALJ's decision. *Id.* at 5-6. Evidence is material if it creates a reasonable possibility that the outcome of the case would change if the evidence were considered. *Booz v. Sec'y of Health & Human Servs.*, 734 F.2d 1378, 1380-81 (9th Cir. 1984). Dr. Shellman's second report does not reasonably create such a possibility. Dr. Shellman obtained essentially the same results on objective testing as he did in the first evaluation.

As in the first evaluation, he again relied extensively on Whosendorfe's subjective reporting which the ALJ found not entirely credible. Accordingly, Dr. Shellman's second report was equally vulnerable to the reasoning provided by the ALJ for discounting his first evaluation.

In addition, despite the similar results on the second evaluation, Dr. Shellman's conclusions were inconsistent. The alteration in his diagnostic impression without any significant change in the information available reasonably supports a lack of confidence in his opinion. Dr. Shellman did not offer a new opinion regarding Whosendorfe's limitations in the B criteria. Nor did he identify specific functional limitations or work related activities Whosendorfe could not perform. Accordingly, the second report does not provide a basis that would reasonably be expected to change the ALJ's conclusions regarding Whosendorfe's limitations. Finally, the persuasiveness of Dr. Shellman's second report is further diminished because it was obtained after and apparently in response to the ALJ's adverse decision. *See Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996); *Weetman v. Sullivan*, 877 F.2d 20, 23 (9th Cir. 1989) (a physician's opinion is less persuasive when it is obtained only after an adverse determination on claimant's application for benefits).

Dr. Shellman's second report does not support a reasonable probability that the outcome of Whosendorfe's application for disability benefits would change. The second report is therefore immaterial and the Appeals Council did not err by declining to review the ALJ's decision on the basis of this new evidence.

C.    *Dr. Smolen*

Whosendorfe reestablished care at Linn County Mental Health Services in early 2005. Admin. R. 377. On February 28, 2005, Dr. Smolen performed an initial assessment based on a 90-minute clinical interview. Whosendorfe told Dr. Smolen she was depressed all the time, experienced

panic attacks, and had problems with anger. She reported her concentration was terrible when she did not take Adderall, but with Adderall, she could concentrate, read a book, and finish tasks. *Id.* at 378. Dr. Smolen diagnosed ADHD, dysthymic disorder, and major depressive disorder. She assigned a GAF score of 45, which is used by clinicians to indicate serious symptoms or serious impairment in social, occupational, or school functioning. *Id.* DSM-IV at 30-32. Dr. Smolen had monthly medication management visits with Whosendorfe thereafter. Admin. R. 350-57, 363-72. By May 2005, Dr. Smolen indicated Whosendorfe's depression was in remission. *Id.* at 370. In January 2006, Whosendorfe's yearly mental health assessment included generally benign mental status findings and a GAF score of 60, indicating moderate symptoms or moderate impairment in social, occupational or school functioning. DSM-IV at 30-32. Admin. R. 358-59.

On August 17, 2006, Dr. Smolen completed a mental residual functional capacity worksheet ("MRFC") by checking off the degree of Whosendorfe's limitation in each of 20 work-related abilities. Notably, Dr. Smolen indicated Whosendorfe had moderately severe impairment in the following abilities: performing activities within a schedule, maintaining attendance, working in proximity to others or in coordination with others without being distracted by them, making simple work-related decisions, completing a normal work schedule without interruptions caused by mental health symptoms, and traveling to unfamiliar places. *Id.* at 394-97.

The ALJ carefully considered Dr. Smolen's treatment records and determined the MRFC checklist was entitled to little weight in her decision. The ALJ found the MRFC opinion was in check-box form without discussion of clinical findings to support the conclusions. This finding is supported by substantial evidence. Although the form provided space for narrative explanation of the findings indicated in the checklist, Dr. Smolen did not include any such explanation. *Id.* at 297.

Such conclusory opinions may permissibly be rejected. *Meanal v. Apfel*, 172 F.3d 1111, 1117 (9th Cir. 1999); *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996). An ALJ need not accept a physician's opinion that does not include an adequate explanation of the clinical findings that support it. *Thomas*, 278 F.3d at 957; *Tonapetyan,* 242 F.3d at 1149.

The ALJ found some of Dr. Smolen's findings contradicted by other evidence in the record. Admin. R. 96. For example, Dr. Smolen indicated Whosendorfe could not travel in unfamiliar places, but the record reflects that she moved to Montana temporarily without reported adverse effects on her mental health, except disruption in treatment. Indeed she reportedly was able to attend classes and work toward obtaining her GED; she returned to Oregon to care for her mother, not because of difficulties living in an unfamiliar place. *Id.* at 248, 252.

In addition, Dr. Smolen's progress notes show generally benign clinical observations. For example, Dr. Smolen consistently noted Whosendorfe's mood was pretty good when she complied with treatment; she exhibited depression primarily when she did not follow her medication regimen. *Id.* at 353, 356-57, 364, 367-72. Likewise, Whosendorfe reported she could complete activities without being distracted when she complied with her Adderall prescription. *Id.* at 378. The medical records reflect that Whosendorfe did not frequently miss or postpone appointments or exhibit indications of an inability to be punctual or maintain a schedule.

The ALJ provided an explanation for discounting Dr. Smolen's MRFC form with specific, legitimate reasons that are supported by substantial evidence. Accordingly, her evaluation should not be disturbed. *Thomas*, 278 F.3d at 956-57.

In summary, the ALJ provided an adequate explanation for her evaluation of the medical source statements in the case record. Whosendorfe urges the court to interpret the record differently

in a manner more favorable to her, but the court must defer to the ALJ's findings of fact if they are supported by reasonable inferences drawn from the record, even if evidence exists to support more than one rational interpretation. *Batson,* 359 F.3d at 1193; *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

## III.    Conclusion

The ALJ elicited testimony from the VE based on the limitations in her RFC assessment and she was not required to incorporate additional limitations she found unsupported by the record. *Batson,* 359 F.3d at 1197-98; *Osenbrock v. Apfel,* 240 F.3d 1157, 1163-65 (9th Cir. 2001); *Bayliss v. Barnhart,* 427 F.3d 1211, 1217 (9th Cir. 2005). The VE testified that a significant number of jobs exist that can be performed by a person with the limitations in Whosendorfe's RFC assessment. Accordingly, the ALJ's conclusion that Whosendorfe is not disabled within the meaning of the Social Security Act is supported by substantial evidence.

## RECOMMENDATION

For the reasons set forth above, the Commissioner's decision should be AFFIRMED and judgment should be entered accordingly.

## **SCHEDULING ORDER**

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

IT IS SO ORDERED.

DATED this 5th day of May, 2010.

Paul Papak
United States Magistrate Judge